STATE OF CONNECTICUT *v.* LANCE WARGO
(AC 18126)

Foti, Lavery and Spear, Js.

748

Argued December 16, 1998—officially released June 15, 1999

*F. Mac Buckley*, with whom was *Moira L. Buckley*, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan K. Alexander*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Lance Wargo, appeals from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a,[1] two counts of arson in the first degree in violation of General Statutes § 53a-111 (a) (1),[2] one count of tampering with evidence in violation of General Statutes § 53a-155 (a) (1)[3] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[4] He claims that the trial court improperly (1) permitted a witness to testify about statements reflecting the victim's state of mind, (2) admitted the hearsay statements of the defendant's children under the excited utterance exception, (3) allowed expert testimony regarding causes of death, (4) allowed a witness to testify to prior bad acts by the defendant, (5) denied

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . ."

[3] General Statutes § 53a-155 (a) provides in relevant part: "A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding . . . ."

[4] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

his posttrial motion for a mistrial, which was based on statements made by the prosecutor during closing argument, (6) refused to charge the jury that the state must prove that the victim's death was caused by criminal means and (7) denied his motion for judgment of acquittal, which was based on a claim of insufficient evidence to convict. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On November 19, 1994, at approximately 3:19 a.m., Ronald McClain and Sheila McClain, neighbors who lived across the street from the defendant, awoke to screams from the defendant's children. Ronald McClain observed an orange glow coming from the left side of the Wargos' house. He also observed the defendant's two children on the roof of the front porch, a ladder against the front porch and the defendant standing at the bottom of the ladder. McClain called 911 and went downstairs to let the Wargos into his home. The children were screaming that their house was on fire and that they could not find their mother. The defendant stated that his wife was in the house, that he could not get her out and that he did not know if she had come home. The children remained at the McClain home while the defendant and Ronald McClain returned to the burning house. The defendant again stated that he did not know if his wife had come home that evening.

The firefighters arrived a few minutes later and found the defendant outside the house, confused and attempting to put water on the fire with a garden hose. The defendant told the firefighters that he did not know his wife's whereabouts. Later, the defendant, while he pointed to the den, told fireman Frederick Telke, "Yes, she's in here, she's in here." When asked if he was sure, the defendant walked to the driveway and pointed to his wife's car.

Firefighters entered the home and approached the den, where the fire was concentrated, but were unable to remain due to the high temperatures, heavy smoke and unstable floor. The body of the victim, Wendy Wargo, the defendant's wife, was later found in this area. Firefighters also entered the second floor of the house and found only smoke damage. They did not hear any smoke detector alarms.

Several hours later, Officer Gerald Allain of the Plymouth police department questioned the defendant. The defendant stated that the victim smoked cigarettes and that he recalled the smoke alarms going off. He stated that the thick smoke forced him to his knees as he took the children to the porch roof.

On November 19, 1994, the defendant gave a signed, written statement to the police. He indicated that the victim slept on the couch because their marriage was "on the rocks." That same day, the defendant told the victim's uncle, James Castiola, that he knew what had happened. He stated that the victim had come home, and had lain down on the couch, which was covered by approximately fifty videotapes. While on the couch, the victim had lit a cigarette and had fallen asleep. The defendant told Castiola that the fire had been accelerated by the videotapes, which cannot be put out when they catch fire.

State Trooper Kevin McGurk was assigned to determine the cause and origin of the fire. He examined the Wargo home the following morning and determined that the fire originated in the den. McGurk discovered a pour pattern leading up to the area of origin, which indicated that an accelerant had been used. On the basis of his observations, McGurk concluded that the fire had been intentionally set. Other officers executed a search warrant on the Wargo home and retrieved an empty bottle of bleach from the basement and a can of acetone from the storage shed. Joseph Cristino, a forensic analysis engineer, examined the two smoke detectors

retrieved from the Wargo home. The battery had been disconnected from the first floor smoke detector, but the second floor smoke detector was operational at the time of the fire.

A notebook also was seized from the defendant's bedroom dresser. The parties stipulated that the notes contained therein were written in the defendant's handwriting. The defendant was a member of the fire brigade at work and had received training in chemical fires and hazardous materials. The defendant was familiar with spontaneous combustion caused by the combination of alkalies and acids. The defendant admitted writing various phrases in the notebook, such as "lock box in shed," "tool box," "acetone," "alcohol clorox," "alm foil," "dry run," "rope kds drs," "straps," "pillow," "oil in can," "rid of stuff," "glvs," "hat," "shirt," "cigs," and "ldr." The defendant stated that these abbreviations could have been a camping list, but that he did not know why he wrote these abbreviations.

Additional facts will be discussed in the context of the defendant's specific claims.

## I

The defendant first claims that the trial court improperly allowed, over objection, a witness to testify as to statements made by the victim reflecting her state of mind. We disagree.

Certain additional facts are necessary to our resolution of this claim. Over the defendant's objection, Irene Ellis, a friend of the victim, testified regarding statements the victim made after a prior domestic dispute. The state offered this testimony to rebut the defendant's claim of marital reconciliation and to establish the victim's state of mind. The trial court instructed the jury that this testimony could be considered only with respect to the state of mind of the victim regarding the

subject of reconciliation. Ellis testified that the victim was proceeding with a divorce and was not going to reconcile with the defendant. She also testified that the victim's biggest fear stemmed from the fact that, if one of the victim's children had not awoken one night during a domestic altercation, she would have been killed.[5]

The defendant claims that this testimony was not relevant and was more prejudicial than probative. In addition, he claims that the admission of this testimony violated his right to confront witnesses against him as guaranteed by the United States and Connecticut constitutions.

"[R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . *State* v. *Hansen,* 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender. *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982)." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones,* 46 Conn. App. 640, 646, 700 A.2d 710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997).

"The trial court's ruling on the admissibility of evidence is entitled to great deference. *State* v. *Caston-*

---

[5] "[Assistant State's Attorney]: And in that phone conversation, did you bring up the topic of divorce?

"[Ellis]: Yes.

"[Assistant State's Attorney]: And did she indicate to you whether or not [she] and [the defendant] were going to be reconciled?

"[Ellis]: She said absolutely not. That they were not going to reconcile; she was going ahead with the divorce and that was her final decision.

"[Assistant State's Attorney]: And did she indicate to you anything regarding her concerns or fears of the defendant? . . .

"[Ellis]: Her biggest fear was that if it hadn't been for [their daughter's] waking up the night things got out of hand, as [the defendant] stated to me prior, that she felt if [their daughter] hadn't woken up that night that she would have been dead then."

*guay*, 218 Conn. 486, 497, 590 A.2d 901 (1991); *State* v. *Sharpe*, 195 Conn. 651, 659, 491 A.2d 345 (1985). [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997). Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990) . . . *State* v. *Beliveau*, 237 Conn. 576, 592, 678 A.2d 924 (1996); *State* v. *Colton*, 227 Conn. 231, 260, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). . . . *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998)." (Internal quotation marks omitted.) *State* v. *Smith*, 49 Conn. App. 252, 257–58, 714 A.2d 1243, cert. denied, 247 Conn. 914, 722 A.2d 809 (1998).

The victim's state of mind was relevant to the defendant's motive to commit the crimes alleged. "We have stated that the presence or absence of motive . . . is a circumstance to be weighed with other evidence for the jury to consider." (Internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 765, 790, 601 A.2d 521 (1992). "The role motive plays in any particular case necessarily varies with the strength of the other evidence in the case. The other evidence may be such as to justify a conviction without any motive being shown. It may be so weak that without a disclosed motive the guilt of the accused would be clouded by a reasonable doubt. . . . *State* v. *Harris*, 182 Conn. 220, 224, 438

A.2d 38 (1980)." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 49 Conn. App. 259.

The victim's state of mind was probative of the defendant's motive to murder her. Evidence was presented that the victim filed for divorce several weeks prior to the fire. The defendant claimed that the victim had agreed to reconcile and not to proceed with the divorce. The victim's statements regarding reconciliation were clearly relevant and probative. Any prejudicial effect was minimized by the trial court's instructions to the jury limiting the purposes for which the evidence could be considered. See *State* v. *Cooper*, 227 Conn. 417, 428, 630 A.2d 1043 (1993). We conclude that the trial court did not abuse its discretion in admitting evidence of the victim's state of mind.

## II

The defendant next claims that the trial court improperly allowed several witnesses to testify as to hearsay statements made by the defendant's children under the excited utterance exception. We disagree.

Sheila McClain and Kimberly Fredericks, a friend of the McClains' son, watched the Wargo children from approximately 3:30 a.m. until 7:30 a.m. on the morning of the fire. A neighbor of the Wargos, Lynn Monahan, brought her children to the McClains' house to keep the Wargo children company. At approximately 5 a.m., while the house was still burning, Monahan's son, James, and Fredericks heard the defendant's son say that his mother was in the house and the defendant's daughter say that her father had stepped on her mother while he was getting the children out of the house. McClain testified that approximately fifteen minutes after the defendant's son arrived at her house, he said that his parents had been fighting. Fredericks testified that the defendant's son indicated that his parents had been fighting that night.

Defense counsel objected to these statements as inadmissible hearsay. The trial court admitted these statements under the spontaneous utterance exception to the hearsay rule.

"In *Perry* v. *Haritos*, [100 Conn. 476, 124 A. 44 (1924)], our Supreme Court recognized the spontaneous utterance exception to the hearsay rule. This exception allows otherwise inadmissible statements into evidence to prove the truth of the matter asserted if it is proven that (1) the declaration follows some startling occurrence, (2) the declaration refers to the occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant. . . . The overarching consideration governing these requirements is whether the statements were made before reasoned reflection had taken place." (Citations omitted; internal quotation marks omitted.) *State* v. *Bowman*, 46 Conn. App. 131, 140, 698 A.2d 908 (1997).

"As a preliminary matter, the trial judge must determine whether an utterance qualifies under this exception to the hearsay rule, and that decision will not be disturbed on appeal unless it constitutes an unreasonable exercise of discretion. . . . The requirement that a spontaneous utterance be made under such circumstances as to negative the opportunity for deliberation and fabrication by the declarant . . . does not preclude the admission of statements made after a startling occurrence as long as the statement is made under the stress of that occurrence. . . . While the short time between the incident and the statement is important, it is not dispositive. . . . All material facts should be weighed by the trial judge when determining whether a statement qualifies as a spontaneous utterance." (Citations omitted; internal quotation marks omitted.) *State*

v. *Guess*, 44 Conn. App. 790, 803–804, 692 A.2d 849 (1997), aff'd, 244 Conn. 761, 715 A.2d 643 (1998).

In the present case, the challenged statements were made while the children were under the stress of watching their house burn while their mother's condition was unknown. The declarations referred to the occurrence, namely the fight between the parents that evening and seeing the defendant step on their mother while escaping from the fire. The evidence supports the conclusion that the children observed their parents fighting and observed the defendant step on their mother. After viewing the record, we cannot say that the trial court abused its discretion in determining that the declarations were made under circumstances that negated the opportunity for deliberation and fabrication by the declarants. We conclude, therefore, that the trial court did not abuse its discretion in admitting the hearsay statements under the spontaneous utterance exception to the hearsay rule.

### III

The defendant next claims that the trial court improperly allowed the medical examiner to testify about causes of death that produce markings only on the skin. We agree that this testimony was improperly admitted, but conclude that any error was harmless.

Malka Shah, a medical examiner for the state, examined the body of the victim. Shah concluded that the victim had died before the fire started because there was no soot or burning in the victim's trachea, bronchi or lungs and the level of carbon monoxide in her blood was inconsistent with having been alive during the fire. Shah found no evidence of death by natural causes, although she stated that she could not determine the exact cause of death. Over objection, the trial court allowed Shah to testify that asphyxiation, drug overdose and electrocution are causes of death that may leave

markings on the skin. The defense argues that this information was irrelevant and invited the jury to speculate as to the cause of death of the victim.

"[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Citations omitted; internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 353–54, 696 A.2d 944 (1997).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. *Pitt* v. *Kent*, 149 Conn. 351, 357, 179 A.2d 626 (1962). One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. *State* v. *Blake*, 69 Conn. 64, 76, 36 A. 1019 (1897). . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. *State* v. *Kelly*, 77 Conn. 266, 269, 58 A. 705 (1904). A party is not required to offer such proof of a fact that it excludes all other hypotheses; it is sufficient if the evidence tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. *State* v. *Briggs*, [179 Conn. 328, 332, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)] . . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support

a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Kiser*, 43 Conn. App. 339, 361–62, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997).

In the present case, Shah testified that the victim had died before the fire started and that the victim had not died of natural causes. She further testified that she could not determine the cause of death. The fact that, in forensic science, death by asphyxiation, drug overdose or electrocution may be determined by markings on the skin is irrelevant because Shah could not provide any connection between those causes of death and the actual cause of death of the victim. This testimony did not support a relevant fact even to a slightest degree and its admission was improper.

Our inquiry, however, is not complete. "Where evidentiary error is claimed, the defendant bears the burden of proving the harmfulness of the error before a new trial will be granted." *State* v. *Sauris*, 227 Conn. 389, 413, 631 A.2d 238 (1993). The defendant must show that the error was harmful, i.e., that it is more probable than not that the improper ruling of the trial court affected the result. *State* v. *Moody*, 214 Conn. 616, 629, 573 A.2d 716 (1990). Despite the lack of relevance, it is unlikely that the testimony affected the result. Shah testified and the trial court reiterated in its charge to the jury that Shah could not determine the exact cause of death. We conclude, therefore, that the defendant has failed to sustain his burden of proving the harmfulness of the error.

## IV

The defendant next claims that the trial court improperly allowed a witness to testify to prior misconduct by the defendant. We disagree.

Over objection, Todd Burkhardt testified that, at a Christmas party in December, 1993, the defendant had expressed a dislike of the victim's smoking habit and had left the party without her. He further testified that later that evening the defendant had nailed a two-by-four board to the front door to prevent the victim from entering the house. The state offered this evidence to show that there was a deteriorating relationship. The trial court admitted this testimony, concluding that it was relevant to the defendant's motive and to show the deteriorating marital relationship. The defendant claimed that the evidence was too remote in time to be probative and that it was irrelevant to any issue before the jury.

"The law in Connecticut on the admissibility of prior misconduct evidence is clear. Evidence of prior misconduct, because of its prejudicial nature, is inadmissible to show that the defendant is guilty of a subsequent crime. . . . Evidence of other misconduct, however, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . . Such evidence, however, to be admissible must also be relevant and material. . . . Uncharged misconduct evidence must satisfy a two part test in order to be admitted as an exception. The evidence must be relevant and material to at least one of the claimed exceptions, and its probative value must outweigh its prejudicial effect. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . Therefore, every reasonable presumption should be given to uphold the trial court's decision." (Citations omitted; internal quotation marks omitted.) *State* v. *Middlebrook*, 51 Conn. App. 711, 715–16, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999).

"Relevant evidence, although prejudicial in nature, 'is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused.' *State* v. *Ramsundar*, 204 Conn. 4, 15, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987)." *State* v. *Mozell*, 40 Conn. App. 47, 51, 668 A.2d 1340, cert. denied, 236 Conn. 910, 671 A.2d 824 (1996). "Some degree of prejudice inevitably accompanies the admission of evidence of a defendant's other misconduct. See *State* v. *Nardini*, 187 Conn. 513, 523, 447 A.2d 396 (1982)." *State* v. *Faria*, 47 Conn. App. 159, 175, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998).

" 'The primary responsibility for conducting the prejudicial-probative balancing test rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion.' " *State* v. *Madore*, 45 Conn. App. 512, 519, 696 A.2d 1293 (1997). As previously stated, evidence of marital discord was relevant to the defendant's motive. While this evidence is prejudicial to the defendant, the defendant has failed to convince us that any accompanying prejudice outweighed the probative value. Exercising every reasonable presumption in favor of sustaining the trial court's decision, we cannot say that abuse of discretion is manifest or that injustice appears to have been done.

## V

The defendant next claims that the trial court improperly denied his posttrial motion for mistrial, which he based on allegedly improper statements made by the prosecutor during closing argument. We disagree.

Certain additional facts are necessary to our resolution of this claim. In her closing and rebuttal arguments to the jury, the prosecutor argued that the defendant

roped the doors to the children's rooms closed, killed the victim upstairs, led his children to the porch roof, carried the victim's body downstairs to the couch, started the fire using chemicals as an accelerant, and then went back upstairs to take his children off the roof. The defendant claims that these statements constituted prosecutorial misconduct because these statements were not supported by the evidence.

"[P]rosecutorial misconduct of constitutional proportions may arise during the course of closing argument . . . . *State* v. *Somerville*, 214 Conn. 378, 393, 572 A.2d 944 (1990). [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). We must, therefore, determine whether the remarks of the prosecutor, in light of all the circumstances, including the trial court's charge, were so egregious and so damaging to the defendant that they deprived him of a fair trial. *State* v. *Richardson*, 214 Conn. 752, 761, 574 A.2d 182 (1990)." (Internal quotation marks omitted.) *State* v. *Sivri*, 46 Conn. App. 578, 590–91, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Alexander*, 50 Conn. App. 242, 257, 718 A.2d 66, cert. granted on other grounds, 247 Conn. 927, 719 A.2d 1169 (1998). "While the privilege of counsel in addressing the jury should not be too closely narrowed

or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." (Internal quotation marks omitted.) *State* v. *Lyons*, 43 Conn. App. 704, 713, 686 A.2d 128 (1996), cert. denied, 240 Conn. 906, 688 A.2d 335 (1997).

We are not persuaded that the prosecutor did anything more than argue permissible inferences from the evidence. The evidence supported the inference that the defendant killed the victim upstairs and carried her body downstairs to the couch. James Monahan and Fredericks testified that they heard the defendant's daughter say that her father had stepped on her mother while he was getting the children out of the house. It is undisputed that (1) the children were on the second floor of the house and did not exit from the ground floor and (2) the victim was found on a couch on the first floor. Shah testified that the victim had died before the fire. From that evidence, it could reasonably be inferred that the defendant killed the victim upstairs and carried her body to the downstairs couch prior to setting the fire.

The evidence supported the inference that the defendant started the fire and used a chemical accelerant. McGurk discovered a pour pattern leading up to the area of origin for the fire, which indicated that an accelerant had been used. On the basis of his observations, McGurk concluded that the fire had been intentionally set. Other officers found an empty bottle of bleach in the basement and a can of acetone in the storage shed. The defendant was a member of the fire brigade at work and had received training in chemical fires and hazardous materials. The defendant was familiar with spontaneous combustion caused by the combination of alkalies and acids. The defendant admitted writing various phrases in the notebook, such as "acetone," "alcohol clorox" and "alm foil."

Furthermore, the evidence supported the inference that the defendant tied the children's door shut. In the notebook found in the defendant's dresser, the defendant wrote "rope kds drs." Viewed in light of all the evidence, the prosecutor's argument was not improper.

## VI

The defendant next claims that the trial court improperly refused to charge the jury that the state must prove that the victim's death was caused by criminal means. We disagree.

" 'It is axiomatic that the state, in a criminal case, has the burden of proving every essential element of the crime charged beyond a reasonable doubt. *State* v. *DeCoster*, 147 Conn. 502, 504, 162 A.2d 704 [1960]; *State* v. *Newman*, 127 Conn. 398, 400, 17 A.2d 774 [1940]. *State* v. *Jackson*, 176 Conn. 257, 258, 407 A.2d 948 (1978)." *State* v. *Morin*, 180 Conn. 599, 609, 430 A.2d 1297 (1980). "The elements of intentional murder . . . under General Statutes § 53a-54a are (1) intent, (2) causation and (3) death by killing as opposed to death by accident or suicide." (Internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 74, 621 A.2d 728 (1993).

"Causation is an essential element of the crime of murder. See General Statutes § 53a-54a. In order for legal causation to exist in a criminal prosecution, the state must prove beyond a reasonable doubt that the defendant was both the cause in fact, or actual cause, as well as the proximate cause of the victim's injuries. . . . In order that conduct be the actual cause of a particular result it is almost always sufficient that the result would not have happened in the absence of the conduct; or, putting it another way, that but for the antecedent conduct the result would not have occurred. . . . On the other hand, proximate cause requires that the forbidden result which actually occurs must be

enough similar to, and occur in a manner enough similar to, the result or manner which the defendant intended (in the case of crimes of intention) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Guess*, supra, 44 Conn. App. 797–98. Proof that the victim's death was caused by criminal means is simply not an element of the crime of murder. Therefore, the trial court properly declined the defendant's request to charge.

## VII

The defendant's final claim is that the evidence was insufficient to support his conviction of murder, arson, tampering with evidence and risk of injury to a child. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489, 698 A.2d 898 (1997).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a

basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) Id., 489–90.

A

The defendant correctly asserts that the state was required to prove that the victim's death was by killing, as opposed to accident or suicide. See *State* v. *Rasmussen*, supra, 225 Conn. 74. He claims that, because the medical examiner was unable to determine the cause of death, the state presented insufficient evidence that he caused the victim's death. We are unpersuaded.

As stated in part VI of this opinion, proof of death by criminal means or proof of the exact cause of death is not required. In the present case, the medical examiner concluded that the victim died prior to the fire. She testified that the victim had not died of natural causes, but that she could not determine the exact cause of death. The defendant argues that "there is no evidence

on the body of [the victim] or otherwise, that the defendant caused her death at all or by a particular means."

The defendant's daughter testified that the defendant stepped on the body of the victim, on the second floor of the house, while attempting to escape from the fire. The body of the victim was later found by firefighters on a couch on the first floor of the house. McGurk determined, on the basis of the presence of a pour pattern, that the fire had been set using an accelerant. The defendant had received hazardous material training and was familiar with the reaction caused by combining acid and acetone. The police seized bleach and acetone from the home of the defendant. On the basis of the severely burned condition of the victim, the medical examiner was unable to determine the exact cause of death. While the exact cause of death may not be known, due to the defendant's own actions, the evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant caused the death of the victim.

The defendant also claims that the evidence was insufficient to prove that he caused the death of the victim with the intent to do so. This claim is equally without merit.

Several weeks prior to the fire, the victim filed for divorce from the defendant. Shortly after the defendant was served with divorce papers, he had a telephone conversation with a friend, Christina Fuggetta. The defendant told Fuggetta that he was upset because he wanted to go to marital counseling with the victim. He was also concerned about child custody issues and said that he would rather see the victim dead than have her raise the children.

On the basis of the defendant's actions at the time of the fire, the children's statements regarding their

mother, the presence of an accelerant pour pattern surrounding the couch where the victim was found, the notes found in the defendant's dresser and his conversation with Fuggetta, the jury reasonably could have found beyond a reasonable doubt that the defendant intended to cause the death of the victim and did in fact cause her death.

## B

The defendant next claims that the evidence was insufficient to support his conviction of two counts of arson in the first degree in violation of § 53a-111 (a) (1), one count of tampering with evidence in violation of § 53a-155 (a) (1) and two counts of risk of injury to a child in violation of § 53-21.

First, the defendant claims that if the trial court had properly excluded the statements of the victim given by Ellis, of the Wargo children and of Shah the evidence would be insufficient to support the conviction. We have already addressed the propriety of the trial court's actions and need not address them further.

Next, the defendant claims that if the conviction for murder is insufficient, the convictions of arson, tampering with evidence and risk of injury to a child must also be vacated. Because we conclude that the evidence was sufficient to support the defendant's conviction of murder, we need not address this claim.

The judgment is affirmed.

In this opinion LAVERY, J., concurred.

FOTI, J., concurring. I agree with the result reached by, and with most of the reasoning of, the majority opinion. I part company with the majority, however, on the conclusion reached in part III that the evidence offered by the associate medical examiner, Malka Shah, was improperly admitted as relevant, yet harmless. In

my view, it is unnecessary to examine whether the introduction of that evidence was harmless because I am not persuaded that the admitted evidence was, in fact, irrelevant. I decline, therefore, to join that part of the majority opinion.

The evidence presented by the state, through the testimony of Shah, an expert, was her opinion that the victim had died prior to the start of the fire and that she did not die of natural causes. This evidence was crucial to the state's case on the charge of murder. Shah was able to explain, with reasonable medical certainty, that it was her opinion that the victim had died prior to the start of the fire because there was no soot or burning in the victim's trachea, bronchi, lungs, or on her tongue, and because the level of carbon monoxide in the victim's blood was inconsistent with her having been alive during the fire. Although Shah could not give a specific cause of death, she gave her opinion, based on reasonable medical certainty, that the victim did not die of natural causes. This seemingly contradictory position was explained by the evidence that the majority concludes is irrelevant.

" 'Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue.' " *State* v. *Carmon*, 47 Conn. App. 813, 818, 709 A.2d 7, cert. denied, 244 Conn. 918, 714 A.2d 7 (1998). "Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Kiser*, 43 Conn. App. 339, 362, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997). "Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to

the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 195, 700 A.2d 38 (1997).

"In determining the admissibility of evidence, [t]he trial court has broad discretion to determine both the relevancy and remoteness of evidence. *Dunham* v. *Dunham*, 204 Conn. 303, 324, 528 A.2d 1123 (1987). In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Coleman*, 35 Conn. App. 279, 285, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994).

Over objection, Shah was permitted to testify that in forensic pathology, there are certain traumatic causes of death, such as asphyxiation, drug overdose and electrocution, that leave evidence of an injury on the skin. Shah went on to explain, however, that given her inability to examine thoroughly the victim's body externally, because it was "severely burned," she could not reach a final conclusion as to the actual cause of the victim's death.

In my view, this testimony was properly admitted by the trial court to reveal the examinations that could have been performed, but were not, and to explain why they were not. This evidence established the significance of the burned condition of the body and helped explain, in context, how and why that condition hampered Shah's ability to determine the exact cause of death. The evidence, therefore, was relevant to explain how Shah arrived at her conclusion that the victim did

not die of natural causes and, yet, was unable to give a specific cause of death. In this regard, the testimony did not inject speculation into the jury's deliberations by having it guess as to a cause of death.

"It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." *State* v. *Perez*, 183 Conn. 225, 227, 439 A.2d 305 (1981). Inferences may be drawn from circumstantial evidence, and it is the jury's function to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. *State* v. *Crafts*, 226 Conn. 237, 246–47, 627 A.2d 877 (1993).

I conclude, therefore, that the evidence was properly admitted because it was relevant and not unduly prejudicial.