## STATE OF CONNECTICUT *v.* MARIANO ARLUK
### (AC 22246)

Dranginis, Landau and Shea, Js.

Argued September 23, 2002—officially released February 18, 2003

*David G. Toro*, with whom, on the brief, was *Norman A. Pattis*, for the appellant (defendant).

*Julia K. M. Conlin*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James R. Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Mariano Arluk, appeals from the judgments of conviction,[1] rendered after a jury trial, of one count each of assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[2] reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a),[3] criminal violation of a protective order in violation of General Statutes (Rev. 1999) § 53a-110b,[4] as amended by Public Acts 1999, No. 99-240, § 4, now § 53a-223, two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1)[5] and three counts of threatening in

[1] Although the defendant listed the docket number for the third case, docket no. 201299S, on his appeal form, he was acquitted of the only crime charged in that case and therefore is not aggrieved by that judgment. To the extent that the defendant's appeal challenges that judgment, the appeal is dismissed.

[2] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[3] General Statutes § 53a-63 (a) provides: " A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

[4] General Statutes (Rev. to 1999) § 53a-110b (a), as amended by Public Acts 1999, No. 99-240, § 4, now § 53a-223 (a), provides: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, or section 54-1k or 54-82r has been issued against such person, and such person violates such order."

[5] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . ."

violation of General Statutes § 53a-62 (a) (2).[6] On appeal, the defendant claims that the trial court improperly (1) admitted into evidence the statement of his minor child to a police officer as a spontaneous utterance and (2) instructed the jury regarding the existence of a protective order. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 23, 1999,[7] the defendant's wife was driving her motor vehicle while the defendant sat next to her in the front passenger seat and their two children were in the middle bench seat in the back of the van. The defendant asked his wife if she ever had engaged in an extramarital affair. She denied committing any such act and started to laugh. The defendant accused her of sleeping with the entire Meriden police department. She continued to laugh and did not respond further to his allegations. The defendant then struck his wife on the side of her head while she was driving, causing her to swerve the van and to become dizzy temporarily. She was able to drive into an empty parking lot and stop the van safely.

The defendant then proceeded to engage in a profanity laced tirade against his wife in front of the children. The defendant also directed his rage toward the children and told them to "fucking shut up or I'll kill your ass." He also threatened to kill his wife and then himself.

The wife did not attempt to calm her children, as she focused on getting back on the road and driving to the Meriden police station. After arriving at the police station, she stopped the van and continuously sounded

---

[6] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening when . . . (2) he threatens to commit any crime of violence with the intent to terrorize another . . . ."

[7] The defendant was charged in three separate informations, each stemming from events that occurred on different dates. The three cases were consolidated for trial.

its horn until the defendant exited the vehicle. Before the defendant left, his wife testified at trial, he said that she was not going to get away and that he would "fucking get [her] and kill [her.]" The defendant fled before the police responded. The wife also left without speaking to any members of the police department.

The wife drove to her parents' home because she was afraid to go to her residence. Her mother, her father and her younger brother were present when she arrived. The defendant had called the home of his wife's parents prior to her arrival, and yelled and screamed at her father. The father, angered by the defendant's telephone call, had alerted the police, who arrived shortly thereafter. At that point, the wife's parents, her younger brother and the police officers were unaware of the events that had occurred in the van between the defendant and the rest of his family.

While an officer was taking the brother's statement regarding the threatening telephone call made by the defendant, one of the defendant's children blurted out that the defendant had struck the wife. The wife then gave the police a sworn statement detailing the events that had occurred in the van. A police officer escorted the wife to her residence where several police officers and firefighters previously had arrived. After obtaining permission from the wife to open the door, they entered the home and arrested the defendant.[8] As a result of those events, a judge of the Superior Court issued a protective order[9] that instructed the defendant to

_____

[8] The wife testified that the defendant did not allow her to have a key to the residence, and that he previously had nailed all the windows shut and the door was double bolted because he did not want her to leave the residence.

[9] General Statutes § 46b-38c provides in relevant part: "(d) In all cases of family violence, a written or oral report and recommendation of the local intervention unit shall be available to a judge at the first court date appearance to be presented at any time during the court session on that date. A judge of the Superior Court may consider and impose the following conditions to protect the parties, including but not limited to: (1) Issuance of a protective order pursuant to subsection (e) . . . (2) prohibition against subjecting the

refrain from threatening, harassing, assaulting, molesting or sexually assaulting his wife. It also prohibited the defendant from entering the family dwelling or any dwelling occupied by his wife.

On August 12, 2000, the defendant had a scheduled visitation period with his children. He returned the children to his wife at approximately 3 a.m. on August 13, 2000, approximately five hours late. Later, on the afternoon of August 13, 2000, the defendant called his wife and told her that he was going to take the children and threatened her if she tried to stop him. On August 14, 2000, pursuant to General Statutes § 46b-15, she obtained a civil restraining order that prohibited the defendant from having any contact with her or the children.

On August 20, 2000, the defendant called his wife and told her that he was coming to her residence to attend his son's birthday party. She instructed him that he was not welcome, and that there was both a criminal protective order and a civil restraining order in effect against him. Nevertheless, he arrived at her residence, but he was not allowed inside. The defendant became irate and started hitting his motor vehicle with his fists.

---

victim to further violence; (3) referral to a family violence education program for batterers; and (4) immediate referral for more extensive case assessment.

"(e) A protective order issued under this section may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim; (2) threatening, harassing, assaulting, molesting or sexually assaulting the victim; or (3) entering the family dwelling or the dwelling of the victim. Such order shall be made a condition of the bail or release of the defendant and shall contain the following language: 'In accordance with section 53a-223, any violation of this order constitutes criminal violation of a protective order. Additionally, in accordance with section 53a-107, entering or remaining in a building or any other premises in violation of this order constitutes criminal trespass in the first degree. These are criminal offenses . . . .' "

The defendant's wife called the police, but the defendant left the residence prior to their arrival.

The police subsequently arrested the defendant. After a trial, the jury found the defendant guilty of eight of the eleven counts with which he had been charged, and the court sentenced him to an effective prison term of ten years incarceration, suspended after six and one-half years, and five years probation with special conditions. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly admitted into evidence the statement of his child to a police officer as a spontaneous utterance. Specifically, the defendant argues that the statement was made too long after the startling event and after the minor child's emotional state had changed from fear and anxiety to anger. We disagree.

As an initial matter, we set forth the applicable legal principles that guide our resolution of the defendant's arguments. "An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998). "The excited [or spontaneous] utterance exception is well established. Hearsay statements, otherwise inadmissible, may be admitted into evidence to prove the truth of the matter asserted therein when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." *State* v. *Kelly*, 256 Conn. 23, 41–42, 770 A.2d 908 (2001); Conn. Code Evid. § 8-3 (2); 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 97c, p. 949. "Whether

an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge. . . . The trial court has broad discretion in making that factual determination, which will not be disturbed on appeal absent an unreasonable exercise of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Shabazz*, 246 Conn. 746, 766, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999). Our Supreme Court has stated that "[t]he ultimate question is whether the utterance was spontaneous and unreflective and *made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 128, 763 A.2d 1 (2000); C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.17.3, p. 619.

The following additional facts are necessary for the resolution of the defendant's claim. On April 23, 1999, a police officer came to the wife's parents' home and took the wife's father's statement regarding the threatening telephone call made by the defendant. At trial, the wife testified that while the police were at her parents' home, her four year old child blurted out that "daddy hit his mommy." The defendant objected on the ground that the statement was inadmissible hearsay. Outside the presence of the jury, the wife testified that the child was attempting to get the attention of the police officer and the child's uncle. Until that point, only the wife and the two minor children were aware of the incident that had occurred while she was driving the van.

She further testified that the defendant screamed at and threatened to kill the child. She stated that in front of the child, the defendant engaged in a violent confrontation during which he threatened to kill her. After the defendant left the van, his wife never spoke with the

child or tried to calm him because she was focused on driving to the police station. She testified that approximately twenty to thirty minutes had elapsed from the time the defendant left the van until the child made his statement. The court admitted the statement under the spontaneous utterance exception to the hearsay rule.

In support of his claim, the defendant argues that the statement was made after an excessive amount of time had elapsed, thereby making the spontaneous utterance exception to the hearsay rule inapplicable. "The requirement that a spontaneous utterance be made under such circumstances as to negative the opportunity for deliberation and fabrication by the declarant . . . does not preclude the admission of statements made *after* a startling occurrence as long as the statement is made under the stress of that occurrence." (Emphasis in original; internal quotation marks omitted.) *State* v. *McNair*, 54 Conn. App. 807, 811, 738 A.2d 689, cert. denied, 251 Conn. 913, 739 A.2d 1249 (1999); C. Tait, supra, § 8.17.6, pp. 620–22. The amount of time between the event and the statement is not dispositive; the trial judge must weigh all the material facts. *State* v. *Stange*, 212 Conn. 612, 618, 563 A.2d 681 (1989). Our Supreme Court has stated that the "majority of the jurisdictions that have addressed the issue of the effect of the time interval between the startling occurrence and the making of the spontaneous utterance have recognized that an acceptable time interval cannot be specified. Each case must be decided on its particular circumstances." Id. For example, in *Stange*, the time period between the event and the statement was fifteen to thirty minutes. Id., 614–15; see also *State* v. *Guess*, 44 Conn. App. 790, 802, 692 A.2d 849 (1997) (forty-five minutes), aff'd, 244 Conn. 761, 715 A.2d 643 (1998); *State* v. *Cayouette*, 25 Conn. App. 384, 386–88, 594 A.2d 1020 (1991) (between ten, twenty-nine minutes).

In the present case, there was evidence before the court that twenty to thirty minutes had elapsed from the time the defendant left the van until the child made the unsolicited statement to the police officer. As previously stated, "[r]ecent decisions . . . have under certain circumstances expanded the acceptable time frame between an event and the spontaneous utterance to a significant period." *State* v. *McNair*, supra, 54 Conn. App. 812. We conclude, therefore, that it was not an abuse of discretion for the court to admit the child's statement, which was made twenty to thirty minutes after the events that had occurred in the van.

The defendant also argues that during the time between the events in the van and when the challenged statement was made, the child's mental state had changed from fear to anger and, therefore, the statement was unreliable. We disagree.

In *State* v. *Wargo*, 53 Conn. App. 747, 731 A.2d 768 (1999), aff'd, 255 Conn. 113, 763 A.2d 1 (2000), the defendant set his house on fire to hide the fact that he had killed his wife. More than ninety minutes after the fire had started, the defendant's children made statements implicating their father.[10] This court stated that "the challenged statements were made while the children were under the stress of watching their house burn while their mother's condition was unknown." Id., 757.

In the present case, ample evidence was before the court that the young child had made the statement while he was under the stress of the events of April 23, 1999. The child observed the defendant scream at the wife. The child was in the van when the defendant struck

---

[10] Specifically, the defendant's son stated that "his mother was in the house" and the defendant's daughter stated that "her father had stepped on her mother while he was getting the children out of the house." *State* v. *Wargo*, supra, 53 Conn. App. 755. The defendant's son also stated that his parents had been fighting that night. Id.

the wife. Additionally, the defendant threatened to kill everyone in the van. Thereafter, the wife, after driving to the police station, sounded the van's horn, creating a loud and raucous commotion. The wife never attempted to speak to or to console her child. After arriving at his grandparents' home, he saw his mother, uncle and grandparents all in an agitated and emotional state. We also note the presence of a police officer at the grandparents' residence. The young child made the unsolicited comment to the police officer under the totality of those stressful and traumatic circumstances. We conclude, therefore, that the court did not abuse its discretion in admitting into evidence the hearsay statement under the spontaneous utterance exception to the hearsay rule.

## II

The defendant also claims that the court improperly instructed the jury regarding the existence of a protective order. Specifically, the defendant argues that the court improperly relieved the state of its burden of proving one of the elements of the crime of violation of a protective order, namely, the existence of a valid protective order. The defendant contends, therefore, that he was denied the right to a fair trial. The defendant failed to preserve his claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[11] We conclude that the defendant waived

---

[11] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Hobson*, 68 Conn. App. 40, 47, 789 A.2d 557, cert. denied, 260 Conn. 910, 796 A.2d 557 (2002). We also note that "[t]he first two questions [of *Golding* review] relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. . . . In the absence of any one of these conditions, the defendant's claim

his claim and therefore cannot satisfy the third *Golding* prong.

We are mindful that in "the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial." *State* v. *Cooper*, 38 Conn. App. 661, 667, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). "[In *Cooper*], we held that a defendant could not satisfy the third prong of *Golding* where he had implicitly waived at trial a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial." *State* v. *Payne*, 63 Conn. App. 583, 588, 777 A.2d 731 (2001), rev'd on other grounds, 260 Conn. 446, 797 A.2d 1088 (2002); see also *State* v. *Corona*, 69 Conn. App. 267, 271, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002).

In the present case, the defendant made an implicit waiver regarding the court's instruction concerning the protective order. The court admitted into evidence a certified copy of the protective order that the wife obtained after the April 23, 1999 incident. Defense counsel, however, did not object to the admission of that document. Our review of the transcript reveals that during the cross-examination of Anthony Waznicki, a Meriden police officer, defense counsel made numerous references to the protective order. During his closing argument, defense counsel again mentioned the protective order. Defense counsel also failed to object when the prosecutor discussed the protective order during

will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Payne*, 63 Conn. App. 583, 587–88, 777 A.2d 731 (2001), rev'd on other grounds, 260 Conn. 446, 797 A.2d 1088 (2002).

closing argument and rebuttal closing argument. Finally, defense counsel failed to object to the court's charge to the jury regarding the existence of the protective order.[12]

"A defendant in a criminal prosecution may waive one or more of his or her fundamental rights." *State* v. *Cooper*, supra, 38 Conn. App. 669. Although the state must ordinarily prove even the undisputed elements of the crime charged, it is not necessary that a defendant's waiver of that requirement be express. Id., 670. "To allow the defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal." (Internal quotation marks omitted.) Id. We conclude, therefore, that the defendant waived the requirement that the state prove the existence of a valid protective order. The defendant, therefore, did not satisfy the third prong of *Golding*. Accordingly, the defendant's claim of a constitutional error must fail.

The judgment is affirmed.

In this opinion SHEA, J., concurred.

LANDAU, J., concurring. I agree with the conclusion reached by the majority, but write separately to express my considerations with respect to the analysis in part II of the opinion. The majority relies on *State* v. *Payne*, 63 Conn. App. 583, 777 A.2d 731 (2001), rev'd on other grounds, 260 Conn. 446, 797 A.2d 1088 (2002), to conclude that the defendant did not satisfy the third prong of *Golding*[1] and, therefore, that his claim of constitutional error cannot be sustained.

---

[12] When instructing the jury as to the charge of violating a protective order, the court stated "[f]or you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt—that the defendant had a protective order issued against him . . . . I hereby instruct you . . . that state's exhibit C is a protective order . . . . "

[1] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

In *Payne,* the court adopted the reasoning of *State* v. *Cooper,* 38 Conn. App. 661, 669–70, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996), in which this court held that the defendant could not satisfy the third prong of *Golding* because, at trial, he implicitly *waived* a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. *State* v. *Payne,* supra, 63 Conn. App. 588. *Payne* held that a defendant could not prevail under *Golding* on a claim that he implicitly waived at trial. Id.[2]

Respectfully, I do not read *Cooper* in the manner in which it was applied in *Payne* and its progeny. The basis of the court's holding in *Cooper* was a waiver analysis, not a *Golding* analysis. The reasoning of the *Cooper* court is set out in part I A of the opinion. *State* v. *Cooper,* supra, 38 Conn. App. 664–71. In that case, the defendant claimed that the court violated his constitutional rights by improperly instructing the jury "that the highway in question is a public highway. So you need not deal with that element and you need not make that finding."[3] (Internal quotation marks omitted.) Id., 664. He did not preserve his claim at trial and sought review pursuant to *Golding.*

The *Cooper* court began a *Golding* analysis, first concluding that the issue was reviewable in that the record was adequate, and second, that the claim was of constitutional magnitude. Id., 665–66. The court then turned to the third prong of *Golding,* i.e., whether a constitutional

---

[2] This court also applied the *Payne-Cooper* analysis in *State* v. *Corona,* 69 Conn. App. 267, 271–73, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002).

[3] The defendant in *Cooper* had been charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a), which provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . on a public highway of this state . . . ."

violation clearly existed, noting that the statute under which the defendant had been charged contained the element of operating a motor vehicle on a public highway. Id., 666.

The defendant in *Cooper* argued that the court's instruction violated the doctrine against mandatory presumptions enunciated in *Sandstrom* v. *Montana*, 442 U.S. 510, 517–24, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). *State* v. *Cooper*, supra, 38 Conn. App. 666–67. This court concluded, however, that it "need not decide whether the *Sandstrom* doctrine applied to [the defendant in *Cooper*] because the defendant waived his right to require the state to prove the public highway element of the offense beyond a reasonable doubt." Id., 667.

The court continued: "In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial. The due process clause prescribes that the defendant has a right to require the fact finder to determine each element of an offense charged beyond a reasonable doubt. . . . Under the circumstances, however, the record reveals that the defendant conceded the element in question, and, therefore, waived his right to require the fact finder to determine the element." (Citations omitted; internal quotation marks omitted.) Id. The court continued to travel the "waiver road" for the next several pages of the opinion until it concluded that the defendant had "waived his due process right to require the state to prove that element." Id., 670. The court never returned to *Golding*. Although I clearly see how one can be led down the *Golding* path, I am convinced that the *Cooper* court arrived at its *holding* on the basis of a waiver analysis.

My reading suggests that a *Cooper* analysis does not provide us with the rule that "a defendant cannot prevail under *Golding* on a claim that he implicitly waived at

trial." *State* v. *Payne*, 63 Conn. App. 588. *Cooper* holds that a waiver is a waiver is a waiver. Consequently, I would resolve the defendant's claim by way of a waiver analysis, rather than by way of a *Golding* examination.

For those reasons, I respectfully concur.