STATE OF CONNECTICUT *v.* TIMOTHY ROBINSON
(AC 23177)

Lavery, C. J., and Bishop and Mihalakos, Js.

Argued September 8, 2003—officially released January 13, 2004

*Michael Stone*, special public defender, for the appellant (defendant).

*Nicole Christie*, certified legal intern, with whom were *Marjorie Allen Dauster*, senior assistant state's attorney, and, on the brief, *Mary M. Galvin*, state's attorney, and *Kevin D. Lawlor*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Timothy Robinson, appeals from the judgment of conviction, rendered after a jury trial, of kidnapping in the second degree in violation of General Statutes § 53a-94[1] and unlawful restraint in the first degree in violation of General Statutes § 53a-95.[2] On appeal, the defendant claims that (1) the court's charge to the jury violated his constitutional right to a

---

[1] General Statutes § 53a-94 (a) provides that "[a] person is guilty of kidnapping in the second degree when he abducts another person." General Statutes § 53a-91 (2) provides that " '[a]bduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation."

[2] General Statutes § 53a-95 (a) provides that "[a] person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

The state also charged the defendant with attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1). The jury found the defendant not guilty of attempt to commit sexual assault in the first degree and the lesser included offense of sexual assault in the third degree in violation of General Statutes § 53a-72a.

fair trial by referring to the complainant as the "victim," (2) the state failed to prove the elements of each offense beyond a reasonable doubt and (3) the conviction of both kidnapping in the second degree and unlawful restraint in the first degree was legally inconsistent. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 19, 1999, the complainant, J, and a friend went to a pool hall in New Haven, where J saw the defendant, with whom she was acquainted. Upon learning that J did not have a way to get home, the defendant offered her a ride, which she accepted. J told the defendant that she wanted to return home. The defendant responded that it was his birthday and that he wanted to "go out and do something." She again told the defendant that she wanted go home. Instead, he drove onto Route 34 and eventually arrived at Peck Place School in Orange. J demanded that the defendant take her home, threatening to walk if he did not comply. The defendant, however, again refused, and J exited the car. The defendant then persuaded her to get back into the vehicle by promising to take her home.

The defendant turned off the ignition. J again attempted to exit the car, whereupon the defendant put his arms around her to prevent her from leaving. Although initially she was able to leave the car, the defendant then blocked her path. J ran away, and the defendant chased her, dove at her feet and then dragged her back to his vehicle. She again managed to free herself and ran toward a nearby home owned by Stanley Cohen. Cohen opened the door and called the police upon hearing J banging on his door and screaming that "he's going to kill me."

Officer Jude Fedorchuck of the Orange police department responded to the call. While he was speaking with J outside the Cohen home, the defendant drove by the

residence. J identified the defendant as her attacker, and Officer Michael Morin of the Orange police department placed the defendant under arrest.

After a jury trial, the defendant was convicted of kidnapping in the second degree and unlawful restraint in the first degree. The court sentenced the defendant to a total effective term of thirteen years imprisonment plus seven years special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court's charge to the jury violated his right to a fair trial under the fourteenth amendment to the United States constitution and the constitution of Connecticut by referring to the complainant as the "victim." Specifically, the defendant contends that the court, by using the term "victim" to describe the complainant, prejudiced his case by removing the presumption of innocence afforded to a criminal defendant.

The defendant argues that the court, in describing J as a victim, influenced the jury's determination of whether she in fact had been victimized. He also claims that the use of the term influenced the jury's perception of the veracity of J's accusations. The defendant contends that the court's use of the term "victim" on thirteen separate occasions was not limited to a particular portion of the charge, but occurred throughout, furthering its prejudicial effect. He further asserts that defense counsel refused a curative instruction because it would have drawn further attention to the court's characterization of J as a victim.

The defendant waived his claim when defense counsel specifically refused the court's offer for a curative instruction. "A criminal defendant cannot forgo opportunities granted to him to cure his procedural lapses,

and then raise the procedural issue on appeal. It is axiomatic that our system of law encourages the conservation of judicial time and resources. . . . We have repeatedly and recently held that a defendant who fails to take advantage of curative options presented by the trial court to remedy possible prejudice waives his right subsequently to claim prejudice." (Citation omitted; internal quotation marks omitted.) *State* v. *McIntyre*, 242 Conn. 318, 333, 699 A.2d 991 (1997); *State* v. *Arena*, 235 Conn. 67, 79–80, 663 A.2d 972 (1995).

The defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), for any unpreserved claim.[3] The defendant argues that the issue merits *Golding* review because it concerns his right to a fair trial and the presumption of innocence afforded to a criminal defendant. Before the charge can be held to violate the defendant's constitutional right to a fair trial, however, the charge must be examined in its entirety.

"The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a cor-

---

[3] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

rect verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 128, 836 A.2d 224 (2003).

Our resolution of the issue is guided by this court's analysis in *State* v. *Arluk*, 75 Conn. App. 181, 191–93, 815 A.2d 694 (2003). See also *State* v. *Hersey*, 78 Conn. App. 141, 157, 826 A.2d 1183, cert. denied, 266 Conn. 903, 832 A.2d 65 (2003). The court in *Arluk* relied on *State* v. *Cooper*, 38 Conn. App. 661, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996), and stated that "[w]e are mindful that in the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial." (Internal quotation marks omitted.) *State* v. *Arluk*, supra, 192. "[In *Cooper*], we held that a defendant could not satisfy the third prong of *Golding* where he had implicitly waived at trial a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial." (Internal quotation marks omitted.) Id.; see also *State* v. *Hersey*, supra, 157.

It is clear, therefore, that the defendant's claim necessarily fails to satisfy the third prong of *Golding* in light of our conclusion that the defendant waived his claim when he did not accept the court's offer to give the jury a curative instruction. Moreover, this court has had the opportunity to rule on the issue of whether the use of the term "victim" in a jury charge violates a criminal defendant's constitutional right to a fair trial. "Although we do not condone the court's use of the word victim

to refer to [the complainant] during trial, any impermissible effect of the use of that term was ameliorated by the court's twice stated instruction to the jurors that it was up to them to decide if the complaining witness was a victim and that any use by the court of that word was inadvertent. Furthermore, the court provided both preliminary and final instructions accurately describing the defendant's presumption of innocence, further negating any potential harm caused by the court's use of the word victim." (Internal quotation marks omitted.) *State* v. *Eric M.*, 79 Conn. App. 91, 99–100, 829 A.2d 439, cert. granted on other grounds, 266 Conn. 917, 833 A.2d 468 (2003).

Although the court in this case did not specifically instruct the jury on its intention in using the term "victim," any prejudicial effect was negated when the court charged the jury on the presumption of innocence afforded to the defendant. The court also instructed the jury as to its duty to determine the guilt or innocence of the defendant and on its role in evaluating the credibility of witnesses.

In addition, as we have discussed, the court offered to give a curative instruction after defense counsel expressed his discomfort with the court's choice of words. After that exchange with defense counsel, the court used "complaining witness" in place of "victim" for the remainder of its charge when the jury was recalled for additional instruction. Defense counsel did not object when the court did not instruct the jury directly on the use of the term "victim."

On the basis of defense counsel's refusal of the court's offer to give the jury a curative instruction, we conclude that the defendant waived his claim and therefore fails to satisfy the third prong of *Golding*. We also conclude that a review of the jury instructions in their entirety

reveals that the court's use of the term "victim" did not violate his constitutional rights to a fair trial.

## II

The defendant's second claim is that the state failed to prove the elements of unlawful restraint in the first degree and kidnapping in the second degree beyond a reasonable doubt.

The defendant first claims that the state failed to prove the elements of kidnapping in the second degree because there was insufficient evidence to show that he had threatened to use or used physical force or that he actually had restrained J. The defendant also claims that the state failed to satisfy the elements of unlawful restraint in the first degree in that it did not present sufficient evidence to show that he restrained J and exposed her to a substantial risk of physical injury. In making those arguments, the defendant seems to rely on inconsistent testimony. The jury, however, was free to believe or to disbelieve the testimony presented. See *State* v. *Vassell*, 79 Conn. App. 843, 845, 832 A.2d 99 (2003).

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Bermudez*, 79 Conn. App. 275, 280, 830 A.2d 288, cert. granted on other grounds, 266 Conn. 921, 835 A.2d 61 (2003).

"It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 87, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003).

In the present case, there was ample evidence to support the jury's verdict on both counts. The state presented evidence to prove both that the defendant used physical force and restrained the victim within the meaning of the kidnapping statute.[4] J testified that the defendant took her to the back of Peck Place School despite her desire to be taken home. She further testified that the defendant put his arms around her when she attempted to leave the car and then blocked her path after she successfully exited the vehicle. The defendant admitted to placing J in a "bear hug" to prevent her from leaving the vehicle. J also testified that the defendant tackled and dragged her back to his car when she again tried to leave the school. Despite the defendant's contention that the complainant did not suffer physical injury, she was bruised when he dragged her back to his vehicle.

The state also produced adequate evidence to satisfy the statutory elements of unlawful restraint. The evidence revealed that the defendant took J to Peck Place School despite her desire to be taken home. J testified that the defendant prevented her from leaving his vehicle by putting his arms around her and then blocking her path once she exited the car. The defendant also

---

[4] General Statutes § 53a-91 (1) provides in relevant part: " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from once place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

tackled J as she was running away and dragged her back to his vehicle.

On the basis of all of the evidence presented, the jury reasonably could have concluded that the defendant was guilty of both kidnapping in the second degree and unlawful restraint in the first degree.

### III

The defendant's final claim is that the guilty verdict of both kidnapping in the second degree and unlawful restraint in the first degree was legally inconsistent.[5] Specifically, he argues that the requirements for illegal restraint under both statutes are distinguishable and inconsistent.

The defendant argues that kidnapping requires that the victim be restrained physically while unlawful restraint requires only that the victim be exposed to the possibility of physical harm from the defendant's restraint. The defendant argues that he could not have used physical force while simultaneously exposing J to a substantial risk of injury. He proposes that kidnapping requires the intention to cause harm while unlawful restraint requires a reckless disregard for the victim's physical well being.

"To determine whether a jury verdict is legally incon-sistent, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. If that is the case, the verdicts are legally inconsistent and cannot withstand challenge. . . . Put

---

[5] This court ordered supplemental briefs at oral argument on the issue of whether unlawful restraint in the first degree is a lesser offense included within kidnapping in the second degree. Both parties' briefs concluded that it is not. Because we agree with the parties, we conclude that the defendant's right to be free of double jeopardy under the fifth amendment to the United States constitution was not violated.

more simply, we determine if there is a rational theory by which the jury could have found the defendant guilty of [all the] crimes." (Internal quotation marks omitted.) *State* v. *Bjorklund,* 79 Conn. App. 535, 565, 830 A.2d 1141 (2003). "It is not inconsistent . . . to find that a criminal defendant possesses two different mental states, as long as [the] different mental states relate to different results." (Internal quotation marks omitted.) *State* v. *Jones,* 68 Conn. App. 562, 567, 792 A.2d 148, cert. denied, 260 Conn. 917, 797 A.2d 515 (2002).

It is clear that kidnapping in the second degree and unlawful restraint in the first degree contain separate elements that are not mutually exclusive so that a conviction of both charges is not inconsistent. As the state argues, the element of physical force associated with kidnapping does not require proof of actual injury. J testified and the defendant admitted that he physically attempted to prevent her from exiting his vehicle by placing her in a "bear hug." The complainant also testified that the defendant tackled and dragged her back to his car when she again tried to leave. The jury therefore reasonably could have found that the defendant both used physical force and exposed J to a substantial risk of physical injury.

It is equally apparent that the differing mental states that the defendant attributes to each offense cannot lead to the conclusion that the verdict was inconsistent. Kidnapping involves the intent to prevent one's liberation while unlawful restraint requires the intent to restrain the victim while exposing him to a substantial risk of physical injury.[6] The state is therefore not required to prove physical injury in connection with kidnapping, but must make a showing of at least the potential for physical harm to prove unlawful restraint. It was therefore not inconsistent to find that the defen-

---

[6] See General Statutes §§ 53a-94 (a) and 53a-95 (a).

dant acted with two different mental states because they led to different outcomes. See id.

Finally, this court has sustained verdicts convicting defendants of both kidnapping in the second degree and unlawful restraint in the first degree. See *State* v. *Yusuf*, 70 Conn. App. 594, 800 A.2d 590, cert. denied, 261 Conn. 921, 806 A.2d 1064 (2002); *State* v. *Fuller*, 58 Conn. App. 567, 754 A.2d 207, cert. denied, 254 Conn. 918, 759 A.2d 1026 (2000).

On the basis of our review of the evidence presented at trial and the verdict returned thereon, we conclude that the verdict was not inconsistent as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.