# STATE OF CONNECTICUT *v.* GREGORY C.[1]
## (AC 25368)

Schaller, DiPentima and Gruendel, Js.

Argued November 18, 2005—officially released April 11, 2006

[1] In accordance with our policy of protecting the interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Stephanie L. Evans*, special public defender, for the appellant (defendant).

*Sarah Hanna*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Marc G. Ramia*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Gregory C., appeals from the judgment of conviction, rendered after a trial to the court, of sexual assault in a spousal or cohabiting relationship in violation of General Statutes § 53a-70b (b).[2] On appeal, the defendant claims (1) that the court improperly precluded certain testimony by the victim relating to her prior sexual history with the defendant, (2) that the court improperly admitted into evidence (a) the statements of the victim to a police officer as

---

[2] General Statutes § 53a-70b provides in relevant part: "(a) For the purposes of this section:

"(1) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body; and

"(2) 'Use of force' means: (A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim.

"(b) No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury. . . ."

a spontaneous utterance and (b) the testimony of three constancy of accusation witnesses for substantive purposes, and (3) that the state failed to disclose evidence in violation of *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

We agree with the defendant's first claim, which is that the court improperly precluded the victim's testimony relating to her prior sexual history with the defendant, and, accordingly, reverse the judgment of conviction and remand the case for a new trial. We also address the defendant's second claim, which is that the court should not have admitted the statements of the victim as a spontaneous utterance, as it is likely to arise in the new trial. We do not address the defendant's third claim, which is that the court improperly admitted the testimony of three constancy of accusation witnesses, because the defendant did not object properly to it at trial and, thus, did not preserve it for our review.[3] We also do not address the defendant's claim that the state violated the *Brady* doctrine because it is unlikely to arise on retrial.

The court reasonably could have found the following facts. On the night of June 26, 2002, the victim and the defendant argued for about two hours.[4] During the argument, at approximately 11 p.m., the defendant told

---

[3] The defendant also contends that this claim is reviewable pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. See Practice Book § 60-5. Our Supreme Court has stated that "the admission of constancy of accusation testimony does not rise to the level of a constitutional violation." *State* v. *Samuels,* 273 Conn. 541, 569, 871 A.2d 1005 (2005). Because the defendant's claim is not of constitutional magnitude, it is not reviewable pursuant to *Golding.* Plain error review is also unwarranted because we cannot conclude that the admission of the three witnesses' testimony was an error so obvious that it affected "the fairness and integrity of and public confidence in the judicial proceedings" or resulted in an unreliable verdict. (Internal quotation marks omitted.) *State* v. *Pierce,* 269 Conn. 442, 450, 849 A.2d 375 (2004).

[4] At the time of the incident, the victim and the defendant had been married for approximately five years.

the victim that he wanted to have sex with her. The victim told the defendant that she did not want to have sex with him. The defendant then grabbed the victim, pushed her onto a bed and pinned her down by holding her neck. The defendant removed the victim's clothes while the victim struggled with him and attempted to push him off her. The victim tried to cross her legs and hold them together, but the defendant forced them open, causing injury to her knee. The defendant then vaginally penetrated the victim with his penis.

The following morning the victim contacted her friend, J, because she wanted to talk to her about the defendant. J met the victim at her workplace where the victim told J that she wanted to report the defendant to the police. The victim told J that she was afraid of the defendant and wanted to get a restraining order to get him out of the couple's house. The victim also told J that the defendant had sometimes forced himself on her by prying her legs open after she had tried to hold them together and refused his advances.

After obtaining a restraining order against the defendant, the victim went to the police station to file a complaint against him as well. At the station, the victim recounted the events that occurred the previous night, explaining how the defendant forced her legs open and penetrated her.

About two weeks later, in July 2002, Detective Rhonda Higgins contacted the victim. The victim told Higgins that she did not want to pursue the case because, in her view, she was not raped or sexually abused by the defendant.[5] A few weeks later, the victim contacted Higgins about the return of evidence that was collected from her apartment. During this conversation,

---

[5] One week later, at Higgins' request, the victim sent Higgins a notarized letter stating that she did not want to pursue the case or give a statement against the defendant.

the victim also discussed the contents of her written statement in the report and agreed to give a formal statement.

In a taped statement, the victim reiterated the details of the sexual assault. The victim indicated that she initially did not give a statement and did not want to pursue the case because she was under the impression that, if she did not verbally say "no," it was not rape and also because she wanted the defendant to go to counseling, not jail. On the basis of the victim's statement, Higgins applied for an arrest warrant, which was granted and executed.[6]

At trial, the victim denied that she was sexually assaulted by the defendant, claiming instead that the intercourse was consensual.[7] She further claimed that she had made everything up and lied to the police when filing her complaint and giving her statements because she was angry at the defendant for saying that he was going to leave her. The victim, however, testified that she forced her legs shut and attempted to push the defendant off her.[8]

On October 20, 2003, the court found the defendant guilty of sexual assault in a spousal relationship in viola-

---

[6] The audiocassette of the victim's statement to the police was admitted into evidence as a full exhibit pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The transcript of the tape recording was not entered as a full exhibit. Both counsel stipulated that the transcript was accurate, and the court used it as an aid while listening to the recording.

[7] The victim testified after she received a grant of immunity from prosecution in connection with the prior statements she made.

[8] The victim testified as follows on direct examination:

"Q. Are you indicating that you never crossed your legs?

"A. No, I am not saying that.

"Q. So, you did force your legs shut, correct?

"A. Yes.

"Q. And you did try and push him off?

"A. Yes."

tion of § 53a-70b (b).[9] On March 12, 2004, the court sentenced the defendant to five years imprisonment, followed by fifteen years of special parole. On April 19, 2004, the defendant filed this appeal.

I

The defendant first claims that the court improperly prohibited him from cross-examining the victim concerning their prior sexual history. Specifically, the defendant claims that the court improperly precluded evidence of the couple's sexual "role-playing" on the ground that such evidence was irrelevant to the defendant's case. We agree.

The following facts are relevant to our resolution of the defendant's claim. During cross-examination of the victim, defense counsel asked if she and the defendant had ever experimented in their sex life. When the victim answered that she and the defendant had engaged in role-playing, the prosecutor objected on the ground of lack of relevance. Defense counsel argued that such testimony was relevant to whether the defendant used force while having sex with the victim on the evening of June 26, 2002.

Specifically, he sought to show that the defendant often played the role of a burglar while the victim played the role of a submissive woman whose house the burglar had broken into. Because the defendant was on trial for sexual assault, defense counsel argued, the court needed to hear about the nature of such role-playing in the victim's and the defendant's sex life together. The court sustained the objection, noting that it was not concerned with the history of the couple's sex life or the patterns in which they engaged in sex, but with the events on the evening of June 26, 2002.

[9] Prior to reaching its decision, on October 16, 2003, the court denied the defendant's motion for a judgment of acquittal on the charge of sexual assault in a spousal relationship.

The defendant maintains that the court's decision to preclude cross-examination concerning the victim's and the defendant's sexual history prevented him from presenting relevant evidence to show that the two engaged in consensual sex on the night in question. Thus, the defendant claims, the court denied him his constitutional right to confrontation under the sixth amendment to the United States constitution.

"[I]t is well settled that questions of relevance are committed to the sound discretion of the trial court. . . . Accordingly, [u]pon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining . . . the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Citation omitted; internal quotation marks omitted.) *State* v. *Lugo*, 266 Conn. 674, 700, 835 A.2d 451 (2003).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant. . . . When the trial court excludes defense evidence that provides the defendant with a basis for cross-examination of the state's witnesses, however, such exclusion may give rise to a claim of denial of the right to confrontation and to present a defense." (Citations omitted; internal quotation marks omitted) *State* v. *Casanova*, 255 Conn. 581, 591–92, 767 A.2d 1189 (2001).

In the present case, the use of force to compel the victim to have sexual intercourse was an element of the charged offense that was required to be proved before the defendant could be convicted. See footnote 2. Therefore, the evidence of the victim's and the defendant's past sexual role-playing was relevant to the issue of whether the defendant used force while having sex with the victim on June 26, 2002. The state had the burden of proving this element beyond a reasonable doubt. By precluding evidence of the couple's prior sexual role-playing, the court improperly deprived the defendant of the opportunity to cross-examine the victim with regard to whether she had engaged in such conduct on the night in question.

Further, the court reasonably could have concluded that the foundation laid for admission of the proffered testimony was sufficient to support the inference suggested by the defendant, namely, that he was merely playing and did not force himself on the victim when he engaged in sexual intercourse with her.[10] In other words, the court reasonably could have found that the proffered evidence had a logical tendency to aid the court in determining if the defendant engaged in consensual sex with the victim.[11] We thus conclude that the court abused its discretion in finding the proffered evidence irrelevant and precluding it on that basis, and, therefore, the defendant's constitutional right to confrontation was violated.

We next inquire whether the improper exclusion of this evidence entitles the defendant to a new trial.

[10] In his brief, the defendant argues that because the victim often played a "submissive" role when they had sex, his intentions for having sex with her on the night in question were merely "playful" and not forceful, as the state contends.

[11] We note that in her initial statements to police, the victim claimed that the defendant forced himself on her while she tried to push him off and cross her legs to prevent him from having sex with her. We also note that at trial, the victim testified that she and the defendant had consensual sex and that she lied about pushing him off and crossing her legs.

"Although the outright denial of a defendant's opportunity to cross-examine a witness on an element of the charged offense implicates the constitutional protection of the confrontation clause, such a denial is [still] subject to harmless error analysis . . . [which will result in a new trial] only if the exclusion of the proffered evidence is not harmless beyond a reasonable doubt. . . .

"Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Internal quotation marks omitted.) *State* v. *Ramirez*, 79 Conn. App. 572, 587, 830 A.2d 1165, cert. denied, 267 Conn. 902, 838 A.2d 211, 212 (2003).

The state contends that any error on the part of the court was harmless beyond a reasonable doubt. The state claims that the evidence of the couple's prior sexual role-playing was merely cumulative of the victim's testimony that her sexual encounter with the defendant was consensual. The state also claims that because the victim recanted her previous statements to the police that incriminated the defendant, her testimony at trial was not important to its case. Further, the state claims that the defendant sufficiently cross-examined the victim regarding the element of consent and that the victim's prior statements were corrobora-

tive and independent evidence of the defendant's guilt.[12] We conclude that the state has not demonstrated that the exclusion of the evidence was harmless beyond a reasonable doubt.

First, the proffered testimony was not merely cumulative because there was no other evidence as to whether the victim engaged in sexual role-playing with the defendant on prior occasions. Second, the testimony of the victim at trial was indeed important. The prosecution's case turned almost exclusively on whether the court, as the fact finder, believed the state's or the defendant's version of events. Because the defendant chose to exercise his right not to testify or otherwise to present evidence, the victim was the only witness who could testify about the issue of force. Third, the court precluded the defense from cross-examining the victim on the issue of consent. On cross-examination, the defendant elicited from the victim merely that leg locking was a position the couple used sexually. By precluding cross-examination concerning the couple's sexual role-playing, however, the court prevented the defense from presenting evidence that could have shown that the victim consented to having sex with the defendant on the night in question. The victim's lack of consent, which is an essential element of the charged offense, bears on the defendant's use of force while having sexual intercourse with the victim. Fourth, as discussed, the defendant's desired line of inquiry was relevant to an element of the charged offense. Although the state offered other evidence supporting the defendant's guilt, the defendant was clearly prejudiced by the preclusion of evidence concerning his prior sexual role-playing with the victim.[13] We therefore cannot conclude that

[12] In making that claim, the state refers to the victim's oral statements, written statement and taped statement.

[13] "We must remember that [t]he determination of whether the state's interests in excluding evidence must yield to those interests of the defendant is determined by the facts and circumstances of the particular case. . . . In every criminal case, the defendant has an important interest in being

the court's ruling was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment and remand the case for a new trial.

II

We next address the defendant's claim that the court improperly admitted into evidence as a spontaneous utterance the statements of the victim to a police officer.

The defendant claims that the court improperly permitted and considered hearsay testimony from a police officer, Matthew Merced. Specifically, the defendant argues that the testimony of Merced, who was called as a state's witness, should not have been admitted under the excited utterance exception to the hearsay rule. We conclude that the court abused its discretion in admitting into evidence certain portions of Merced's testimony; however, we need not address whether the improper ruling constituted harmful error requiring a new trial because we already have determined that the case must be remanded for retrial.

The following additional facts are necessary for the resolution of the defendant's claim. On June 27, 2002, the day after the alleged rape, the victim arrived at work by 6 a.m. and later that morning met J at the victim's work site. The two went to the local state courthouse where the victim obtained a restraining order against the defendant. J and the victim then went to the police station at about 2 p.m., where the victim waited for more than one hour to see Merced.

At trial, Merced testified that he met with the victim at the New Haven police station at 3:30 p.m. on June

permitted to introduce evidence relevant to his defense. Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Ramirez*, supra, 79 Conn. App. 589.

27, 2002. The prosecutor then asked Merced what the victim specifically told him about the alleged rape the night before. Defense counsel objected to the question on the ground of hearsay, whereupon the prosecutor replied that the statements should be admitted under the excited utterance exception to the hearsay rule. The court overruled the objection. Merced then testified that the victim told him that she tried to close her legs and said "no" when the defendant initially tried to have sex with her. She also told Merced that she "reluctantly" said "go ahead" after the defendant was on top of her and began poking her in the side.

Merced also testified as to what happened after the alleged sexual assault. When the prosecutor asked Merced to explain what the victim had told him in this context, defense counsel again objected on the ground of hearsay. Again, the prosecutor explained that the statements were being offered under the excited utterance exception to the hearsay rule. The court overruled the objection, and Merced then testified that the victim told him that the defendant would not let her out of his sight the morning after the alleged assault occurred.

We set forth the applicable legal principles that guide our resolution of the defendant's arguments. "An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies . . . The excited [or spontaneous] utterance exception is well established. Hearsay statements, otherwise inadmissible, may be admitted into evidence to prove the truth of the matter asserted therein when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." (Citation omit-

ted; internal quotation marks omitted.) *State* v. *Arluk*, 75 Conn. App. 181, 187–88, 815 A.2d 694 (2003).

"The ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation. . . . While the amount of time that passes between a startling occurrence and a statement in question is not dispositive, the court is entitled to take all the factual circumstances into account when deciding the preliminary question of whether a statement was spontaneous. . . . The appropriate question is whether the statements were made before reasoned reflection had taken place." (Citations omitted; internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 60–61, 770 A.2d 908 (2001).

"Whether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge. . . . The trial court has broad discretion in making that factual determination, which will not be disturbed on appeal absent an unreasonable exercise of discretion." (Internal quotation marks omitted.) *State* v. *Arluk*, supra, 75 Conn. App. 187–88.

In support of his claim, the defendant argues that the victim's statement to Merced was made the day after the alleged rape occurred, thereby making the spontaneous utterance exception to the hearsay rule inapplicable. Indeed, under the totality of the circumstances, the victim's statement to Merced was not spontaneous, but was made with ample time for "reasoned reflection . . . ." (Internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 61. Here, more than fifteen hours had passed between the time of the alleged sexual assault and the victim's statement to Merced. Further, the victim discussed her alleged assault at length with

J prior to giving her statement. The victim thus had considerable time and opportunity to collect her thoughts and reflect on what had occurred the night before. Accordingly, the court improperly allowed Merced to testify as to the statements of the victim on the basis of the spontaneous utterance exception to the hearsay rule.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.